# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT
# Hartford Division

APR 3 2023 AM 10:53
FILED-USDC-CT-HARTFORD

Rahulkumar M Patel,

M7 Investment Fund I LLC, a New Jersey
limited liability company,

DNA Lodging LLC, a Connecticut
limited liability company,

DNA 789 CT AVE LLC, a Connecticut
limited liability company,

**Plaintiff,**

v.

Mount Street US LLP,
a Georgia Foreign Limited Liability Partnership,

CWCapital Asset Management LLC,
a Delaware limited liability company,

789 Connecticut Avenue Holdings, LLC
a Connecticut limited liability company,

Wilmington Trust, National Association,
as Trustee, for the benefit of the Holders of
COMM 2015-CCRE23 Mortgage Trust,
Commercial Mortgage Pass Through Certificates;

Darshan Gandhi,

Nirav Patel,

Amit Shah,

**Defendants.**

Civil Action No.: _____

Jury Demand -YES

**Sealed Motion due to Medically Condition**

**TEMPORARY RESTRAINER ORDER,**

**PRELIMINARY INJUNCTION AND**

**PERMANENTLY INJUNCTION**

# Temporary Restraining Order, Preliminarily, and Permanently Injunction Relief

# Plaintiff's Brief in Support of Application for Temporary Restraining Order,

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs Rahulkumar M. Patel , M7 Investment Fund I LLC, DNA Lodging LLC and DNA 789 CT Ave LLC ("Plaintiffs") respectfully move the Court for a Preliminary Injunction with Temporary Restraining Order against Defendants, Mount Street US LLP, CWCapital Asset Management LLC, 789 Connecticut Avenue Holdings, LLC, Wilmington Trust, National Association, as Trustee, for the benefit of the Holders of COMM 2015-CCRE23 Mortgage Trust, Commercial Mortgage Pass Through Certificates, Darshan Gandhi, Nirav Patel and Amit Shah ("Defendants") to halt and restrain irreparable injury. Unless the property is stopped, the property is currently scheduled to be auctioned to the general public on April 3, 2023 at 12pm EST for sale and to the highest bidder by April 5, 2023. The relief requested is set out in Plaintiffs' proposed temporary restraining order. The property is alleged to be currently located in this District. Without emergency treatment and the entry of temporary restraints, it will be sold. Wherefore, Plaintiffs' respectfully requests that the Court grant Plaintiffs' Motion for a Preliminary Restraints and a Temporary Injunction.

**Summary (see Compliant for names)**

**June 1, 2019 Day Time, Rahul is working.**

DNA won the deal and was signed on 5/3/19 and close by 7/17/19 or faster. The First American had a escrow account until the 45 days passed, so about 16 days on June 17, 2019, and Seller would get the deposit. The loan is ready with deposit on May 31, 2019. I did a FedEx and will be done in about 30 days but we plan on July 1, 2019.

The investors were getting ready too with RealCrowd (crowd funding) approved for our 2nd deal and Yam Capital with a loan.

We had plenty of time with a July 17, 2019 close deadline. A Purchase and Sale Agreement price of $15,500,000.00.

The Ten-X auction is on April 3, 2023, today, through April 5, 2023 and a temporary restraining order is necessary.

**June 1, 2019 Evening, Rahul is about to go stroke:**

I arrived at a friend's house at around 6pm and all of our close families are there. At about 6:20pm I suffered a stroke but didn't know that a June 13, 2019. I was told that I was up and down until June 13, 2019.

**June 1, 2019 through June 11, 2019, Rahul was sleeping due to the stroke.**

Pratiksha called a friend and CW, Rakesh Patel ("Rakesh"), on June 3, 2019 or so. He was told that Rahul suffered a stroke. Rakesh said let's not call CW because maybe Rahul may wake up. This is a top employee at CW and he said let's not call. June 17, 2019 is the expiration of Due Diligence. Then on June 10 or 11, she said Rahul is still not up. So, Rakesh said okay and I should now tell them, CW, that Rahul is suffered a stroke. Then later of June 10 or 11, Pratiksha faxed a signed but moving the house to her parents, she lost the document. Then on June 11, 2019, the partner Darshan Gandhi and CW signed the Termination.

## Overview ((see Compliant for names)

But Pratiksha was my girlfriend but not wife and that was wrong. And Rakesh knew that she is a girlfriend since 2009 at least and because we talked about it at his home at East Rockaway, NY (probably couple times afterwards). And on May 28, 2019, Darshan Gandhi and I opened a company called DNA 789 and we both agreed and agreement, oral written, until we put it on written. Then I suffered a stroke on about 6:15pm on June 1, 2019. Also, by the Due Diligence deadline of June 17, 2019, my dad, Manherlal Patel would have a Managing Director for himself and then got an attorney-in-fact for me, so we had 30 days to close on July 17, 2019.

In 2019, Rahul, through his company DNA, attempted to purchase the DoubleTree by Hilton Hotel Norwalk in Connecticut. On May 3, 2019, DNA entered into a purchase and sale agreement ("PSA") with 789 Connecticut Avenue Holdings, LLC.

The members of DNA are M7, Darshan Gandhi, Amit Shah, and Nirav Patel. The Seller is owned by Wilmington Trust for the benefit of the 2014-CCRE23 Mortgage Trust, and its "special servicer" is CWCapital Asset Capital Management LLC.

On June 1, 2019, according to the terms of the PSA, Rahul had 16 days to complete due diligence and then 30 days to close the deal or July 17, 2019

With the loan secured, he was about 30 days from closing. Additionally, on May 7, 2019, Realcrowd approved DNA for the second time, which would have allowed DNA to attract investors in a few weeks.

However, on June 1, 2019, Rahul suffered a stroke. As a result, Darshan Gandhi, another manager of DNA, cancelled the deal. But Darshan was agreed that DNA 789 that I and Darshan agreed that DNA and PSA would be set towards DNA 789. Darshan and I agreed that DNA 789 to be now control of DNA and PSA. On May 28, 2019, Darshan and I said by oral until we are written. But I suffered a stroke on June 1, 2019.

Each member of DNA was trying to put together real estate acquisition deals, in which they would also find investors to finance the acquisition, and then present the deal to the other DNA members who could either join the deal or let the partner proceed with the deal individually. This is what happened with the deal on the Hartford hotel and the DNA deal was the second deal. I did both deals and all four partners, Darshan, Nirav, Amit and Rahul (me) were still the partners for their credit, investors, etc. Hartford deal was, after fees to other partners. was effectively mine. This is what happened, but stroke stop me, and a fraud began.

I would have paid the total purchase price without them, Darshan, Nirav and Amit but I got a stroke.

With RealCrowd was ready after approved for second deal, like Hartford deal, the DNA with investors were ready. But I got stroke, and the Seller and Darshan got the Termination. This was a fraud because Seller and Rakesh knew about 2009 showing them, I am single and not a husband. Pratiksha should know she was single too. She now knows and files head of household.

However, Darshan and Rakesh conspired to have Pratiksha execute the termination notice and then DNA (via Darshan) ratify it. I told me that she, Pratiksha, signed deposit on 6/10/2019 but now stroke on June 1, 2019. At Termination, Darshan and CW signed but its fraud.

It is alleged that the cancellation was due to fraud and misconduct by the defendants, "special servicer" CW, and other parties involved in the transaction.

The plaintiff, Rahul, alleges that the defendants engaged in fraudulent behavior by cancelling the deal and breaching the PSA without a valid reason.

The evidence points to this fraudulent intent to be that the website for DNA was taken down by three partners of DNA and the Seller had two bids on the property after the termination. Ultimately, Seller still owns the property but my investors in Hartford and potential investor for DNA got "spooked". That's why Darshan, Nirav and Amit are fraud.

Because Rakesh and CW knew, Darshan could not sign on behalf of DNA without my approval, and that he did not have it. DNA 789 would not allow the Termination but it did because ,Darshan, he ignoring it. Manherlal Patel would have a Managing and attorney-by-fact for me from the 6 days (June 11, 2019 through June 17, 2019) but the Termination already happened. The Seller and the partners didn't give me time and on June 11, 2019 sign Termination but 6 days on June 17, 2019 was still open when it was Termination on June 11, 2019. That's why it is fraud.

CW and MSU both authorized to be special servicer. First CW and then about late 2021 it became MSU. The owner, Wilmington, is still owner but will auction on April 3, 2023 and end it with a winner on April 5, 2023. A temporary restraining order, preliminarily, and permanently was be another letter on April 3, 2023 as well.

This action caused damages to Rahul, including the loss of opportunity to acquire the DoubleTree by Hilton Hotel Norwalk. As a result, Rahul is seeking compensation for damages caused by the defendants' actions.

**ARGUMENT**

**A. Legal Standard for A Preliminary Injunction.**

On both a preliminary injunction motion and application for a temporary restraining order, the district court must consider the following factors:

a. The extent to which the applicant is being irreparably harmed by the conduct complained of; and

b. either the likelihood that the movant will succeed on the merits, or that the merits present serious questions for litigation and the balance of the hardships tips decidedly in the movant's favor. Fisher-Price v. Well-Made Toy Mfg. Corp., 25 F. 3d 119, 122 (2d Cir. 1994). The moving party need not show that success is an absolute certainty to meet the likelihood of success standard but only that the likelihood exceeds fifty percent. Abdul Wali v. Coughlin, 754 F. 2d 1015 (2d cir. 1985).

## B. Likelihood of success on the merits

Serious questions are substantial, difficult, and doubtful, so as to make them a fair ground for litigation and thus for more deliberative investigation. Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits. EEOC v. Evans Fruit Co., (E.D. Wash. Oct. 26, 2010).

At an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits or questions serious enough to require litigation. Guzman v. Shewry, 552 F.3d 941, 948 (9th Cir. 2009).

In order to succeed on its request for a preliminary injunction, movant must make a clear showing that it is likely to succeed on the merits. Nanoexa Corp. v. Univ. of Chi., (N.D. Cal. Aug. 27, 2010).

## C. Likelihood that movant will suffer irreparable harm in absence of a preliminary injunction

Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages. Because intangible injuries generally lack an adequate legal remedy, intangible injuries may qualify as irreparable harm. Ariz. Dream Act Coal. v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014).

To demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief, a plaintiff must proffer probative evidence that the threatened injury is imminent and irreparable. Conclusory affidavits are insufficient to demonstrate irreparable harm. Rubin ex rel. NLRB v. Vista Del Sol Health Servs., Inc., 80 F. Supp. 3d 1058, 1100-01 (C.D. Cal. 2015).

A district court cannot grant an injunction unless the movant has shown that irreparable harm is likely; the possibility of harm is insufficient to meet the movant's burden. Small v. Avanti Health Sys., LLC, 661 F.3d 1180, 1191 (9th Cir. 2011).

## D. The balance of equities tips in the movant's favor

The court must evaluate the interim harm the defendants are likely to sustain if the injunction is granted and compare it with the harm the plaintiff is likely to suffer if an injunction does not enter. <u>De Vico v. United States Bank</u>, (C.D. Cal. Oct. 29, 2012).

In assessing whether the plaintiffs have met this burden, the district court has a duty to balance the interests of all parties and weigh the damage to each. <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1138 (9th Cir. 2009).

If a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor and the other two Winter factors are satisfied. <u>Shell Offshore, Inc. v. Greenpeace, Inc.</u>, 709 F.3d 1281, 1291 (9th Cir. 2013).

The real issue is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied. <u>Scotts Co. v. United Indus. Corp.</u>, 315 F.3d 264, 284 (4th Cir. 2002).

**E. The injunction is in the public interest**

The public interest analysis for the issuance of a preliminary injunction requires us to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief. <u>Collins v. Brewer</u>, 727 F. Supp. 2d 797, 814 (D. Ariz. 2010).

The public interest inquiry primarily addresses the impact on nonparties rather than on the parties. It embodies the U.S. Supreme Court's direction that, in exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. <u>CTIA - Wireless Ass'n v. City of Berkeley</u>, 854 F.3d 1105, 1124 (9th Cir. 2017).

When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors

granting or denying the preliminary injunction. Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138–39 (9th Cir. 2009).

The plaintiffs bear the initial burden of showing that the injunction is in the public interest. However, the district court need not consider public consequences that are highly speculative. In other words, the court should weigh the public interest in light of the likely consequences of the injunction. Such consequences must not be too remote, insubstantial, or speculative and must be supported by evidence. Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009).

## CONCLUSION

Accordingly, for all of the reasons set forth above and in Plaintiffs Complaint, Plaintiffs respectfully requests that the Court grant its Motion for a Temporary Restraining Order.

## Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

**Date of signing**: April 3, 2023

**Signature of Plaintiff as Pro Se**: _____

**Printed Name of Plaintiff**
Rahulkumar M. Patel
DNA Lodging LLC
M7 Investment Fund I LLC
DNA 789 CT AVE LLC
121 Providence New London Turnpike
North Stonington, CT 06359
New London County
646-474-3177
M7partners@gmail.com